JEREMIAH COLLINS *et al.*

*v.*

HYRAM THAYER.

1. LIMITATION — *of suit to recover money paid on voidable contract.* In a suit to recover back money paid upon a voidable contract, the statute of limitations begins to run from the time the contract is terminated by one party or the other, and not before.

2. A verbal contract for the sale of land is voidable at the will of either party, but not absolutely void, and the parties have a right to rely upon each other to perform it, until some act is done by one or the other manifesting an intention to terminate it.

3. But when any thing is done by either party, manifesting an intention to terminate a contract voidable under the statute of frauds, the statute of limitations will begin to run against an action to recover money paid on such contract from that time.

4. STATUTE OF FRAUDS — *rights of parties to a voidable contract.* The vendor of land, under a verbal contract for the sale of real estate, may terminate it and recover possession of the land, or the purchaser may terminate it and recover payments he may have made, and this, too, with performance or an offer to perform the contract.

5. RECOUPMENT. In a suit by a purchaser of land, under a verbal contract which has been terminated at the option of either party, to recover payments made on such contract, the vendor may recoup the value of the use and occupation of the land, if it has been occupied by the purchaser, unless he has been compelled by law to pay the same to the owner of a paramount title.

APPEAL from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was a suit brought by the appellee against the appellants, for the recovery of money paid by him under a verbal contract for the purchase of land. The facts are stated in the opinion.

Messrs. DICKEY & CAULFIELD, and Mr. W. T. HOPKINS, for the appellants.

Mr. S. W. HARRIS, and Mr. JAMES N. READING, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that appellants, some time in the early part of the year 1865 or 1866, entered into a verbal contract to sell to appellee a half section of land. The price to be paid was $40 per acre, in six equal annual installments; all unpaid amounts to draw eight per cent interest per annum. Appellants were to convey a good title. The agreement was never reduced to writing. Appellee paid, in a lot of cattle, $850 in August, 1866, and in another lot of cattle, $2,000, in October, 1868. There being some doubt as to the validity of the title, it was understood that if appellants should be unable to convey a good and valid title, they should refund the payments made on the

purchase, with interest.   Appellee, by arrangement, went into possession, and occupied the land, until in the month of January, 1873, when he was evicted under a judgment, in an ejectment suit, in favor of one Riggs, recovered under a different title.   After the cattle were paid, in 1868, and appellee had refused to make further payments, Jeremiah Collins swears he notified appellee that they did not consider themselves any longer bound by the contract.

Appellee testified, and it seems to be conceded, that in February, 1874, he caused a notice to be served on appellants, that on a specified day he would pay the balance of the money due on the original contract, and that he would require them to make a deed for the land  pursuant to the agreement; that on the day named he took a sufficient sum of money to make the tender, and went to the house of Jeremiah Collins, but he was not at home, but he said that he did not know that he would have let them have it if they had made a warranty deed for the land.

Appellants set up and relied upon the statute of limitations of five years.   To this plea a replication was filed, that the cause of action did accrue within five years before the suit was commenced.   A trial was had, resulting in a verdict and judgment in favor of plaintiffs for $3,839.   A motion for a new trial was entered and overruled, after verdict and before judgment.   The record is brought here, and various errors are assigned.

The first question we propose to consider is, when did the statute of limitations begin to run?   This contract was voidable under the statute, and, by objecting, either party had at pleasure the right to terminate and refuse to execute it.   But until it was terminated the purchaser was not bound to sue. The parties had a right to rely upon each other to perform the agreement until some act was done terminating its existence. Courts will enforce such contracts, unless the statute of frauds is interposed as a defense.   All courts, to render the statute availing, require that it must be set up in some mode, and re-

lied upon as a defense.   Hence it is reasonable to say the contract is not absolutely void, as are contracts that are prohibited to be made by the statute, as, where they are immoral or contravene sound policy.   But such a contract is voidable, at the will of either party, unless so far executed as to take it out of the operation of the statute.   It then follows that the statute of limitations did not begin to run until one party or the other brought it to an end.   If, as he testifies, Jeremiah Collins notified appellee, that from the time he mentioned he and his brother would not be bound by the contract, it was then at an end, and appellee had no right further to rely upon the agreement, and the statute began at that time to run, and would bar an action to recover back the purchase money at the end of five years from that date.

On the other hand, if no such notice was given, then the verbal agreement was clearly ended when appellee gave notice that he would make a tender and demand a deed.   And the statute then began to run, and would become a bar in five years from that date.   And it did not matter whether he made a valid tender, or what amounted to a tender, as he thereby manifested an intention to terminate the contract, which could have been done simply by giving notice that it was at an end.   The contract being voidable under the statute at the election of either party to terminate it, notice only was required by one party to the other that it was ended, or by the performance of any act which manifested such an intention.   The object in attempting to make the tender was no doubt under the supposition that appellee was bound to show that he was ready and willing to perform his part of the agreement before he could recover the purchase money paid under the contract.   Had the agreement been in writing, and valid and binding, this would no doubt have been true.   But as each of these parties must have known that either could at any time terminate it, and for its execution it depended upon the concurrent continued consent of the parties until its final consummation, it does not depend upon the same rule that governs binding agreements.

Each knew that the other might at any time sue for and recover any thing paid or advanced to the other.

The seller could end the contract and sue for and recover the possession of the land, or the purchaser could terminate it, and sue for and recover back payments he may have made. This, too, without performing or offering to perform his part of the agreement. Where the contract is valid and binding, either party, to place the other in default and rescind the contract must perform or offer to perform his part of the agreement according to its terms. Here, neither was required to do any act before he terminated the agreement, because the statute, to bind the parties beyond their mere consent, requires that it shall be in writing, and thus placed beyond the withdrawal of that consent by either party.

The next question is, was the inability of the vendors at all times after sale to convey according to their agreement, a sufficient excuse for appellee in not performing his agreement according to its terms? We have no doubt it was. And even further, had they been able to convey a sufficient title, he could, nevertheless, have refused to pay, as we have seen, and recovered the amount he had paid, if not barred by the statute of limitations, and that is a fact to be found by the jury, and not for us to determine.

It is also urged that the court erred in refusing to instruct that if appellee took possession under the agreement, and afterward occupied the land, appellants had the right to recoup the value of the use of the land whilst so occupied, against the claim of appellee. He, by agreeing to purchase, and entering into possession under appellants, thereby acknowledged that they were the owners of the land. He also knew that they or he might at any time change his relation from that of an occupant as a purchaser, to that of a tenant at will, liable to account for rents. It is unjust for appellee to hold this land for years under the contract, such as it was, and then escape from paying for what he has received to his profit and benefit. And unless evicted by paramount title, and a liability to ac-

count for the rents to the true owner, he is liable to account to his vendors for its use. *Whitney* v. *Cochran*, 1 Scam. 209, which sustains the rule that he must account to his vendors.

It is, however, contended that appellants offered to prove, but were not permitted by the court, that they had paid to Riggs, who recovered the land in ejectment, all rents from 1864 till 1873, the time when appellee was evicted. When a tenant is evicted by paramount title, and suggestions are filed, and a judgment recovered against the tenant for rents and profits, which he pays, there can be no doubt that he may sue his landlord and recover back any rents paid him and included in the judgment. Or where the recovery under the suggestions is greater than the amount of rent agreed to be paid, and he pays such excess, he may no doubt recover it from the landlord, although he paid no rent. And it is for the reason that the landlord is bound to maintain the possession of the tenant and keep him harmless in the occupancy of the land. It then follows, that if such a relation exists between landlord and tenant, appellants, by virtue of the relation, might pay the rent, and look to appellee to pay them fair and reasonable rent.

Suppose a landlord, believing he was owner of the demised premises in fee, leases the same to a tenant for a stipulated rent, and the tenant is evicted by paramount title, and a judgment for use and occupation is recovered against him, and it is paid by the landlord, will any one doubt that the landlord may sue for and recover the stipulated rent? And this, too, whether such recovery were more or less than the rent reserved in the lease. Or, under such circumstances, does any one suppose that, although the landlord paid the recovery against the tenant, the latter might nevertheless recover back rents paid under the lease, or refuse to pay rents accrued and unpaid?

It then follows, the court below erred in excluding this evidence; and in so far as the instructions are opposed to the views here expressed, the judgment must be reversed and the cause remanded.

*Judgment reversed.*