ANNA A. GARY *et al.*

*v.*

R. NEWTON *et al.*

*Opinion filed February 18, 1903.*

1. ADVANCEMENTS—*advancement must be evidenced in writing.* Under section 7 of the Statute of Descent no gift or grant is deemed an advancement unless so expressed in writing by the donor or acknowledged in writing by the donee.

2. SAME—*release of an expectancy is but an advancement.* A verbal agreement by an heir to release his expectancy in his father's estate in consideration of the payment of a sum of money to him by his father is but an attempted advancement, and is void, under section 7 of the Statute of Descent, if not charged in writing by the donor as an advancement.

3. SAME—*when defense that advancement is void may be made by demurrer.* The defense that an alleged advancement is void may be made by demurrer if it appears from the face of the bill that it was not charged in writing by the donor nor acknowledged in writing by the donee.

4. SAME—*rights of creditors cannot be defeated by setting up oral advancement.* Rights of judgment creditors in the interest of an heir in land acquired by descent cannot be defeated by setting up an alleged verbal agreement by the heir to release his expectancy in consideration of an advancement not expressed in writing by the donor and of which such creditors had no notice.

5. EQUITY—*equity will not enforce contract which works injustice.* A court of equity will not become a party to the enforcement of a contract by which wrong and injustice will be perpetrated.

6. SAME—*equity will not postpone liens of creditors to a secret trust.* A court of equity will not enforce an agreement the result of which is to postpone the liens of judgment creditors to a secret, unrecorded trust of which they had no notice.

7. CONVEYANCES—*judgment creditors occupy the position of subsequent purchasers.* Under section 30 of the Conveyance act a creditor who has acquired a lien by virtue of his judgment and execution occupies the same position as a subsequent purchaser with respect to prior unrecorded instruments of writing or conveyances.

APPEAL from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This is a bill for partition, filed on January 15, 1901, in the circuit court of Macoupin county by the appellants, Anna Gary and Etta Gary, against the appellees herein for the partition of three hundred and sixty acres of land. The appellees are Sarah Gary, Mary Holliday, James Frederick Gary, William A. Gary, Henry H. Gary, William A. Gary as administrator of the estate of Thomas E. Gary, deceased, Elmer E. Gary, and certain judgment creditors of James Frederick Gary, to-wit, R. Newton, C. H. Burgdorff & Co., Jasper Johnson, John F. Collins, Mrs. A. Tompkins and A. D. Rollins. The bill alleges that Thomas E. Gary died intestate July 20, 1899, leaving him surviving his widow, the appellee, Sarah A. Gary, and, as his only children and heirs-at-law, the appellants Anna Gary and Etta Gary, and the appellees, Mary Holliday, James Frederick Gary, William A. Gary, Henry H. Gary and Elmer E. Gary. The bill, as originally filed and as subsequently amended, alleged the payment by Thomas E. Gary in his lifetime at divers times to his seven children above named of divers large sums of money and other property as advancements. The bill alleges that the amount of the advancements, so made to the appellee, James Frederick Gary, was $2150.60. The bill also alleges that, on November 27, 1893, Thomas E. Gary paid to his son, James Frederick Gary, the last item of said sum of $2150.60, to-wit, $500.00, and that the said James Frederick Gary then and there agreed with his father, Thomas E. Gary, that, in consideration of said sum of $500.00 and of the several sums of money and articles of property before that time advanced to him, he,

the said James F. Gary, would relinquish all his right, title and interest in and to his expectancy in the estate of his said father; that Thomas E. Gary, in consideration of said agreement on the part of James F. Gary to so release and convey to him his said expectancy, paid to James F. Gary $500.00, and that James F. Gary then and there received and accepted that sum in consideration thereof; "but that said relinquishment was not then, nor is the same now evidenced by any writing executed by the said James Frederick Gary." In the bill it was alleged that the sums of money, so received by way of advancements, were brought into court that the same might be considered by the court in determining the amount of the several interests in and to said lands. The bill also alleged, that certain persons, above named as judgment creditors, had obtained judgments against James Frederick Gary in Greene and Jersey counties, and were setting the same up. The bill prayed that James Frederick Gary might be declared by decree to be divested of his interest in said lands by virtue of said agreement with his father; that the levies made under the executions of said judgment creditors, and the certificates of said levies, so recorded, might be vacated and set aside, together with any sale and certificate of purchase executed by the sheriff under any of said executions; that said Mary Holliday, William A. Gary, Henry H. Gary and Elmer E. Gary be required to bring into court the several amounts so received as advancements; that an accounting be had; that dower and homestead be set off and assigned to the widow, Sarah Gary; that a partition of the residue of said lands be made under the direction of the court, said advancements being considered between the children above named, except James Frederick Gary, according to their rights, a one-sixth interest to each of said children except said James Frederick Gary; and that, in case a partition or assignment of dower and homestead could not be made without preju-

dice, etc., the premises to be sold and the proceeds to be distributed.

A demurrer was filed to the original bill upon the ground that James F. Gary had an interest in the property therein described, and was a necessary party, and that the allegations, whereby it was charged that James F. Gary received from his father, Thomas E. Gary, certain sums of money by way of advancement, were not in accordance with the statute in such case made and provided.

An amendment was then filed to the bill, which set up that advancements were made in various sums to the seven children of Thomas E. Gary above named. The amendment averred "that said advancements are not charged in writing as required by the statute in such cases made and provided," but that it was the oft expressed purpose of Thomas E. Gary to divide all of his estate among his six children, except James Frederick Gary, to the exclusion of James Frederick Gary, such exclusion being in pursuance of the agreement above set forth; that Thomas E. Gary, being old and feeble, died suddenly, and was thereby prohibited from carrying into effect his intention in this behalf; that his children assembled a few days after his funeral and mutually agreed that the amounts, received by each of them, should be deducted from the share of each child in the final distribution of their father's estate. The amendment also alleges that James Frederick Gary, at the time of receiving said sum of $500.00, being the last item of said sum of $2150.60, on the 27th day of November, 1893, being then in financial stress, agreed with his father that, in consideration of the payment to him of the further sum of $500.00, "he would convey, assign and release to his father all his right, title, share and interest in and to any and all estate of which his father might thereafter die seized;" that Thomas E. Gary, in consideration of said agreement to release his said expectancy, paid to

James Frederick Gary $500.00, "but that said agreement or conveyance was not then, nor is the same now, evidenced by any writing then or since executed by the said James Frederick Gary."

A demurrer was filed to the bill, as amended, upon the grounds that there was no legal advancement to James Frederick Gary "because it appears from said bill that the pretended advancement mentioned in said bill was not charged in writing as an advancement to his said son, James Frederick Gary;" that no valid agreement was made between Thomas E. Gary and his son, James Frederick Gary, by which the expectancy of the latter passed from him to his father; that there was no agreement respecting the interest of James Frederick Gary in the lands of his father, present or prospective, at the time of said payment, in writing or otherwise, signed, by Thomas E. and James Frederick Gary, and said pretended agreement was void under the Statute of Frauds in such case made and provided; that there is no time alleged within which the agreement was to be executed; and that complainants have not stated such a case as entitles them to any relief.

The demurrer to the amended bill was sustained, and the complainants below, the present appellants, stood by their bill. Thereupon the court dismissed the bill as to the part thereof affected by the demurrer.

Separate answers were filed by the judgment creditors above named, setting up that, upon the death of Thomas E. Gary, James Frederick Gary became seized by descent of an undivided one-seventh interest in said lands. These answers also set up the recovery of their respective judgments by said judgment creditors, and the levies made by the sheriff of Macoupin county upon the alleged interest of James Frederick Gary in said lands. The answer of R. Newton, one of the judgment creditors, sets out that not only were the executions under his judgments levied, but that a sale was had there-

under, at which he became the purchaser of the interest of James Frederick Gary in said premises on January 15, 1901, and prays that in case of a sale the amount of his certificate of sale, with interest, should be paid out of the share of said James F. Gary.

The judgment creditors above named also filed a cross-bill, setting up their judgments and the proceedings thereunder as above stated, and also setting up that the brothers and sisters of James F. Gary were conspiring to hinder and delay his creditors, and that he has an interest in the lands. The cross-bill prays that the court will enter a decree, finding that James F. Gary has title to a one-seventh part of said real estate, and that said judgment creditors are entitled to a lien thereon to the amount of their judgments, etc., and to that end, if sale is made, the amounts of their judgments may be paid out of the money realized from the sale of the share of said James F. Gary, subject to right of dower and homestead, etc. The appellants, Anna Gary and Etta Gary, answered the cross-bill, and admitted the validity of the judgments and the subsequent proceedings thereunder, but denied that James F. Gary had any interest in the land, and denied any conspiracy with him to hinder and defraud his creditors, or that he was insolvent, and denied that the judgments or levies were liens upon the land, and averred the judgment creditors were not entitled to be paid out of the proceeds of sale of said lands.

The court rendered a final decree, in which it was recited that the judgment creditors filed a demurrer to the original bill, which was confined to the advancements, alleged to have been made to James Frederick Gary, and to the agreement or family arrangement, alleged to have been entered into between him and his father, and also recited the allegations of the original bill and the sustaining of the demurrer thereto, and the allegations of the amended bill, and the filing of a demurrer thereto, and the sustaining of the same, and that the complain-

ants elected to stand by their bill, and that the same was dismissed in so far as it related to said advancements and said agreement, because said advancements were not charged in writing in accordance with the statute, and because the agreement or some memorandum thereof, was not in writing. The decree also recited a reference of the cause to the master, and a hearing of the same upon bill, answers, cross-bill, replications, etc. The decree also found that the alleged advancements were not legal, nor in accordance with the statute, but that the children of Thomas E. Gary had each of them waived any informality in regard to the same, and that the record of said advancements should stand as to the amounts alleged to have been made as advancements to said six children, except James F. Gary; that the total amount, advanced to said six children, was $4097.88; that Thomas E. Gary in his lifetime paid to James Frederick Gary $2150.60; that when he paid the last item of said sum, to-wit, $500.00, on November 27, 1893, James Frederick Gary agreed with his father as above stated; but that the sums of money, aggregating $2150.60, were not so charged as to constitute advancements, and that the same are to be wholly disregarded in the distribution and partition of the estate; that the agreement in regard to the expectancy was not sufficient in law, nor availing in equity as against the rights of the judgment creditors of James Frederick Gary, because the agreement was not in writing; that, upon the death of Thomas E. Gary, James Frederick Gary became seized by descent of an undivided one-seventh of said premises, and that the judgments and levies of executions are liens upon the same. The decree thereupon ordered and adjudged that partition be made among all the seven children, including James Frederick Gary, of the premises aforesaid, taking into consideration said advancements; and the decree allots to James Frederick Gary an undivided one-seventh part of said land, not taking into consideration said sum

of $2150.60 received by him, nor any part thereof; and it was decreed that said one-seventh part, so set off to said James Frederick Gary, was subject to the liens of said judgment creditors as aforesaid.  It was further ordered in the decree that all proceedings under said sale by R. Newton and under said levies should be suspended during the appeal.

The present appeal is prosecuted from the decree so entered, by the present appellants who are complainants below.

.A. J. DUGGAN, for appellants:

An assignment of an expectant interest in an estate by an heir to an ancestor, if fairly made and for a valuable consideration, will be upheld in equity.  *Parsons* v. *Ely,* 45 Ill. 232; *Bishop* v. *Davenport,* 58 id. 105; *Galbraith* v. *McLain,* 84 id. 379; *Kershaw* v. *Kershaw,* 102 id. 307; *Long* v. *Long,* 19 Ill. App. 383; 30 id. 559; *Simpson* v. *Simpson,* 114 Ill. 603; *Crum* v. *Sawyer,* 132 id. 443; *Bartmess* v. *Fuller,* 170 id. 193.

An heir may assign his expectancy in his ancestor's estate to the latter by a parol agreement.  *Galbraith* v. *McLain,* 84 Ill. 379.

A conveyance of an expectant interest by an heir to the ancestor operates not as a conveyance of an interest in lands, either to the ancestor or to the other heirs of the same ancestor.  Its effect is to obliterate the right to inherit of the heir so assigning, to the same extent as if the heir had died without issue prior to the death of the ancestor.  *Crum* v. *Sawyer,* 132 Ill. 443.

A contract within the Statute of Frauds is not void, but voidable at the option of the party sought to be charged.  The defense is one that may be waived.  It is a lawful contract.  It is as binding as a written contract unless the defense of the statute is pleaded.  *Whitney* v. *Cochran,* 1 Scam. 209; *Collins* v. *Thayer,* 74 Ill. 138; *Kelly* v. *Kendall,* 118 id. 650; *Wilson* v. *Mason,* 158 id. 304.

201—12

The plea of the Statute of Frauds is a personal defense. If the party sought to be charged elects to waive this defense he cannot be compelled to set it up, nor can another not in privity with him set it up in his stead. *Chicago Dock Co.* v. *Kinzie,* 49 Ill. 289; *Kelly* v. *Kendall,* 118 id. 650; *Singer* v. *Carpenter,* 125 id. 117; *Hughes* v. *Lumsden,* 8 Ill. App. 185; *Wilson* v. *Mason,* 158 Ill. 313; *Insurance Co.* v. *Gordon,* 20 Ill. App. 556; *McCoy* v. *Williams,* 1 Gilm. 589.

There is no such privity between an heir who has assigned his expectant interest in his ancestor's estate and the judgment creditors of such heir as will authorize the judgment creditor to set up the Statute of Frauds against the assignment. *Bank* v. *Bank,* 123 Ill. 510; *Mason* v. *Pierce,* 142 id. 331; *Singer* v. *Carpenter,* 125 id. 117; *Cross* v. *Commission Co.* 153 id. 499.

An assignment of an expectant interest is good as against execution creditors. *Holroyd* v. *Marshall,* 10 H. L. Cas. 209; *Bispham's Eq.* sec. 165.

W. E. P. ANDERSON, L. P. PEEBLES, and RINAKER & RINAKER, for appellees:

The title vested on the death of Thomas E. Gary in James F. Gary, his son, by operation of law, necessarily. The law casts the title on him, as heir-at-law, without regard to his wish. He cannot disclaim it if he would. 2 Blackstone's Com. 201; 2 Washburn on Real Prop. 399; Rev. Stat. chap. 39, sec. 1; *Marvin* v. *Collins,* 98 Ill. 510.

The lien of the judgments in favor of appellees, under the law and admitted facts in the case, attached by operation of law. Rev. Stat. chap. 77, secs. 1, 3, 4, 34, 35.

The facts appear on the face of the bill that show that the contract which appellants set up against appellees is invalid under the Statute of Frauds, and these appellees have the right to raise the question by demurrer. *Cloud* v. *Greasley,* 125 Ill. 313; *Wilke* v. *Miller,* 171 id. 556; *Dicken* v. *McKinley,* 163 id. 318; *Randal* v. *Howard,* 2 Black, 585.

The contract in this case cannot be enforced by the appellants, either at law or in equity. Its enforcement affects the title to real estate. It is not in writing nor is any part of it in writing, while the law requires that it shall all be in writing. *Cloud* v. *Greasley*, 125 Ill. 313; *Farwell* v. *Lowther*, 18 id. 252; *Weaver* v. *Fries*, 85 id. 356; *Seymour* v. *Belding*, 83 id. 222; *Frazer* v. *Howe*, 106 id. 574.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The main question, presented by the record in this case, relates to the validity of the oral agreement, alleged by appellants to have been made between James F. Gary and his father, Thomas E. Gary, in the lifetime of the latter, by the terms of which it is claimed that Thomas E. Gary paid to his son the sum of $500.00 on November 27, 1893, and that, in consideration of such payment, James Frederick Gary agreed to convey, assign and release to his father all his right, title, share and interest in and to any and all estate, of which his father might thereafter die seized. It will be observed that the agreement is executory in character. It provided that, in consideration of the sum of $500.00 so paid to him, James Frederick Gary would release his expectancy in his father's estate. So far as relates to this agreement, the bill is a bill for the specific performance thereof. The bill prays that a decree may be entered, divesting James Frederick Gary of his interest in said lands by virtue of said agreement, and that the levies, so made upon his interest by the judgment creditors, be vacated and set aside. The controversy is wholly between the judgment creditors of James Frederick Gary and the heirs of Thomas E. Gary. So far as the public records show, James Frederick Gary, upon the death of his father, became vested by inheritance with the title to an undivided one-seventh part of the three hundred and sixty acres in controversy. No question is made as

to the validity of the judgments, or of the levies there-under, or of the sale made by one of the judgment cred-itors. The only question, therefore, is whether, by virtue of the oral agreement made between James Frederick Gary and his father, his one-seventh interest in the es-tate was extinguished in such a way, that the other six children and heirs are entitled each to one-sixth of the premises in question, leaving nothing in said James Fred-erick Gary for said judgments to take effect upon.

*First*—The alleged contract, made between James Frederick Gary and his father, Thomas E. Gary, by the terms of which James Frederick Gary agreed to release his expectancy, or his future interest in his father's estate as heir by reason of the payment to him of $500.00 by his father, was merely an oral contract, and not in writing.

This court has held in a number of cases that an es-tate in expectancy is an appropriate subject of contract, and that agreements by expectant heirs in regard to their future contingent estates, when fairly made up-on a valuable consideration, will be enforced in equity. (*Parsons* v. *Ely*, 45 Ill. 232; *Bishop* v. *Davenport*, 58 id. 105; *Galbraith* v. *McLain*, 84 id. 379; *Kershaw* v. *Kershaw*, 102 id. 307; *Simpson* v. *Simpson*, 114 id. 603; *Crum* v. *Sawyer*, 132 id. 443; *Bartmess* v. *Fuller*, 170 id. 193). Upon a careful examination, however, of all these cases, it will be ob-served that, where releases of an heir's expectancy have been upheld, such releases, so far as they apply to real estate, were in writing. It is true, that in *Galbraith* v. *McLain, supra*, there was an oral agreement, made by a son with his father to release all claim in expectancy to what was left of the father's estate after the execution of a certain deed to the son. It appeared in that case, that the father executed a deed to the son, conveying to him a certain portion of his land, and possession of the property, so conveyed by the deed, was taken by the son. There was only an oral agreement that the property conveyed by the deed was accepted in lieu of all claim,

which the son might have in the residue of his father's estate upon the death of the father, but the transaction was justified upon the ground that the deed was executed and delivered, and possession was taken by the son under and by virtue of the same. Thus, in *Riggles* v. *Erney*, 154 U. S. 253, it was said that, although the Statute of Frauds avoids parol contracts for lands, yet the complete execution of the contract in that case by Carrington by conveying to Williams the lands he had agreed to give him in exchange, prevented the operation of the statute. In *Kershaw* v. *Kershaw*, *supra*, we said (p. 313): "A parol promise of an heir to accept a deed of certain property in lieu of his expected interest in his father's estate, followed by the execution and delivery of the deed and possession of the property, was held to be sufficient," referring to the case of *Galbraith* v. *McLain*, *supra*. No such state of facts exists in the present case, as operated to sustain the validity of the parol agreement in the case of *Galbraith* v. *McLain*, *supra*. We are of the opinion, that the agreement in question, alleged to have been made between James Frederick Gary and his father, Thomas E. Gary, is void under the Statute of Frauds, as not being in writing. (See also *Quarles* v. *Quarles*, 4 Mass. 680; *Kenney* v. *Tucker*, 8 id. 142; *Fitch* v. *Fitch*, 8 Pick. 479; *Nesmith* v. *Dinsmore*, 17 N. H. 515).

The money, amounting to $2150.60, paid to James Frederick Gary by his father in the lifetime of the latter cannot be regarded as an advancement within the meaning of that term as used in our statute. This is so, because it was not evidenced by any writing. Section 7 of chapter 39 of the Illinois Revised Statutes in regard to descent provides as follows: "No gift or grant shall be deemed to have been made in advancement unless so expressed in writing or charged in writing, by the intestate, as an advancement, or acknowledged in writing by the child or other descendant." (2 Starr & Curt. Ann. Stat. —2d ed.—p. 1432). In view of this statute, this court has

held in a number of cases that an advancement, which is not evidenced in the manner required by the statute, is, in legal effect, no advancement at all, however clear it may appear that it was so intended. (*Long* v. *Long*, 118 Ill. 638; *Wilkinson* v. *Thomas*, 128 id. 363; *Bartmess* v. *Fuller*, 170 id. 193; *Marshall* v. *Coleman*, 187 id. 556). In the case at bar, the bill itself admits upon its face that the advancements, alleged to have been made as such to the children of Thomas E. Gary, "are not charged in writing as required by the statute in such cases made and provided." The bill in the present case is somewhat inconsistent in its allegations, for the reason that it charges the sum of $2150.60, alleged to have been paid by Thomas E. Gary to his son James Frederick Gary, to have been intended as an advancement. If this was true, then the item of $500.00, which constituted a part of the sum of $2150.60, was a part of the sum intended to be an advancement. It could not, however, be valid as an advancement, because the gift or payment of such money was not expressed in any way in writing. In a subsequent part of the bill, however, it is alleged that the last item of $500.00, constituting a part of the whole sum of $2150.60, was the consideration of a verbal agreement, by which James F. Gary agreed to release his expectancy in his father's estate. It would seem to be impossible that the payment of the $500.00 should have been intended as part of an advancement to James F. Gary, and at the same time should have been the consideration of an agreement for the release of the son's expectancy in the father's estate. This payment of $500.00, viewed as a part of the alleged advancement, was invalid under section 7 of the act in regard to descent, independently of the Statute of Frauds, for the reason that it was not expressed in writing. Indeed, a contract, by the terms of which an heir agrees to release his expectancy in his father's estate in consideration of a sum of money advanced to him by his father, is not the less an advancement because he there-

by gives up the whole of his interest in his father's estate. An advancement has been defined to be "the giving by a parent to the child or heir by way of anticipation the whole or a part of what it is supposed the donee will be entitled to on the death of the party making it." (*Wallace* v. *Reddick*, 119 Ill. 156; *Cawthon* v. *Coppedge*, 1 Swan, 487; 1 Am. & Eng. Ency. of Law,—2d ed.—p. 760). By the terms of this definition an advancement is not only the giving by a parent to a child or heir by way of anticipation of a part of the expectant estate, but of the whole of it. It follows that the release of all his interest in his father's estate by James Frederick Gary in consideration of the payment to him of $500.00 by his father, was nothing more than an attempted advancement, and, as such, was void under section 7 of the Statute of Descent without reference to the Statute of Frauds, which requires a contract in regard to real estate to be in writing.

*Second*—On the part of the appellant it is claimed that, even if the verbal contract here set up is void under the Statute of Frauds, the appellees, who are judgment creditors of James F. Gary, cannot take advantage of it. Undoubtedly, a verbal contract respecting land is not absolutely void, but voidable only at the will of either party, and it may be as obligatory upon the parties to it as a written contract, where the parties themselves make no objection that it is not in writing. In other words, a third person cannot object for the parties to such a contract that they are not bound by it. (*Collins* v. *Thayer*, 74 Ill. 138; *Kelly* v. *Kendall*, 118 id. 650.) It has been said that the Statute of Frauds, which is a statutory defense, "is personal and cannot be interposed by strangers to the agreement. Like usury, infancy and a variety of other defenses, it can only be relied upon by parties or privies. Mere strangers have no right to plead or insist upon it for the benefit of others." (*Chicago Dock Co.* v. *Kinzie*, 49 Ill. 289; *Singer, Nimick & Co.* v. *Carpenter*, 125 id. 117; *Wilson* v. *Mason*, 158 id. 304).

The bill in this case seeks to enforce the verbal agreement, alleged to have been made between James Frederick Gary and his father, against James Frederick Gary himself, and four other heirs of his father, and also against the judgment creditors already mentioned of James Frederick Gary. The position of the appellants is, that, while James Frederick Gary himself might, if he chose, plead the Statute of Frauds, as a defense to the enforcement of the agreement, because it is verbal and not in writing, yet that the other defendants below, his judgment creditors, being third persons, cannot plead the Statute of Frauds as a defense, such defense being only personal to him. This may be true. But, in the present case, the Statute of Frauds is not pleaded as a defense either by James Frederick Gary, or by his judgment creditors. The bill itself, brought to enforce the verbal agreement, recites, upon its face, that the agreement is oral. The amended bill alleges "that said agreement or conveyance was not then, nor is the same now evidenced by any writing, then or since executed by the said James Frederick Gary." The question as to the validity of this agreement arises upon demurrer to the bill, which contains the allegation thus quoted. It is well settled that "whenever it appears from the face of the declaration, bill or complaint that the agreement sued upon is within the Statute of Frauds, and fails to comply with the requirements thereof, the appropriate mode of taking advantage of the defect is by demurrer." (9 Ency. of Pl. & Pr. p. 704; *Dicken* v. *McKinley*, 163 Ill. 318; *Cloud* v. *Greasley*, 125 id. 319; *Randall* v. *Howard*, 2 Black, (U. S.) 589). In *Cloud* v. *Greasley*, *supra*, we said: "The rule is, where it appears upon the face of the bill that the agreement to convey is oral, it may be taken advantage of by demurrer to the bill." In *Dicken* v. *McKinley*, *supra*, we also said: "Where a bill shows affirmatively that a contract or promise to make a will is not in writing, the defense of the Statute of Frauds may be raised by demurrer."

Most of the cases, already referred to, where the question has arisen as to the validity of an agreement by an heir to release his expectancy in his ancestor's estate, have been cases where the controversy was between the ancestor, or his heirs, and the heir so agreeing to release his expectancy. Here, however, the controversy is between all the heirs and the judgment creditors of the one, who has agreed to make the release. The heirs of Thomas E. Gary, except James Frederick Gary, set up no defense against the agreement, because it is for their interest that it should be enforced. By its enforcement they each get one-sixth of the property, instead of one-seventh. James Frederick Gary himself is not opposed to the enforcement of the agreement, and his interest lies in that direction because, if it is not enforced, he must be held to be the owner of an undivided one-seventh of the property, which will be subjected to the payment of the liens held against it by his judgment creditors. The bill seeks to enforce a void agreement in such a way as to deprive *bona fide* creditors of the right to collect their debts. An application for the specific performance of a contract is always addressed to the sound legal discretion of the court. In *Hamilton* v. *Harvey*, 121 Ill. 469, we said (p. 473): "Courts of equity will decree a specific performance where the contract is in writing, and is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed, but not otherwise." (See also *Bowman* v. *Cunningham*, 78 Ill. 48.) A court of equity will never become a party to the enforcement of a contract by which wrong and injustice will be perpetrated. "To entitle a party to relief he must come with clean hands, and a cause that appeals to equity for relief." (*Tamm* v. *Lavalle*, 92 Ill. 263; see also *Long* v. *Long*, 118 id. 638; *Mitchell* v. *King*, 77 id. 462).

It would certainly be laying down a dangerous precedent to hold that, after the title to an interest in property had vested in an heir by descent, he could deprive

his judgment creditors of their liens upon his interest by setting up an oral agreement, made years before between himself and his deceased ancestor, to the effect that he was to have no interest in the property.

There is no allegation in the bill, that the judgment creditors in this case had any notice of the existence of the oral agreement here insisted upon prior to the rendition of their judgments, or prior to the existence of the liens acquired by them under their judgments. Section 30 of the Conveyance act provides that "all deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 944). In interpreting this statute it has always been held in this State, that judgment creditors are within the protection of this section 30, "and stand as purchasers, and are to be regarded as such." (*McFadden* v. *Worthington*, 45 Ill. 362.) In Illinois, a creditor, who has obtained a lien upon land by virtue of his judgment and execution thereunder, occupies the same position with respect to prior unrecorded instruments of writing, or conveyances, as does a purchaser. (*Massey* v. *Westcott*, 40 Ill. 160; *Martin* v. *Dryden*, 1 Gilm. 187; *Milmine* v. *Burnham*, 76 Ill. 362; *Columbus Buggy Co.* v. *Graves*, 108 id. 459). The judgment creditors here stand in the position of subsequent purchasers, having no notice of the alleged oral agreement between James F. Gary and his father.

The title to one-seventh of the land, so far as the record shows, and so far as these judgment creditors were able and bound to take notice of it, stood in James Frederick Gary. If the oral agreement be considered as valid and binding, then he held the legal title to an undivided

one-seventh of the property in trust for the benefit of his
brothers and sisters, the other six heirs of Thomas E.
Gary. The trust, upon which he thus held the title when
the judgment liens were acquired, was a secret trust, un-
disclosed by anything upon the records, and of which
the judgment creditors here concerned had no notice.
Inasmuch as they had no notice, that secret trust cannot
be enforced as against them. A *bona fide* purchaser of
the legal estate—and the judgment creditors here are to
be regarded as *bona fide* purchasers—will be protected
against the prior equitable title of another, of which he
had no notice; and although an heir, holding the legal
title to an interest in property by descent, may so hold
it in trust for others, still a third person may acquire the
title from him, if such third person has no notice of the
trust, and acts in good faith. (*Robbins* v. *Moore*, 129 Ill. 30).
After the death of the original owner, the apparent legal
title is in the heir, and the policy of the law which is
to make patent all legal titles to lands, so far as prac-
ticable, that strangers may safely purchase, equally re-
quires that the *bona fide* purchaser from the heir should
be protected. (*Burton* v. *Perry*, 146 Ill. 71; *Kennedy* v.
*Northup*, 15 id. 148). If, therefore, the agreement set up
in the bill in this case should be enforced, it would lead
to the inequitable result of postponing the liens of the
judgment creditors to a secret unrecorded trust, of which
they had no notice. A court of equity will not enforce
such an agreement, as that which is here under consid-
eration, under the circumstances thus indicated.

We are therefore of the opinion that the court below
decided correctly in sustaining the demurrer to the bill,
and in dismissing the same as to the portion thereof
which was demurred to.

Accordingly, the decree of the court below is affirmed.

*Decree affirmed.*