## SUSAN F. CROSSMAN

*v.*

## NANCY KEISTER *et al.*

*Opinion filed October 23, 1906.*

1. DEEDS—*giving back a deed does not affect the legal title.* The delivery back by the grantee, to the grantor, of an unrecorded deed does not affect the legal title, but such re-delivery, if made with the intention that the deed shall be destroyed for the purpose of re-vesting title in the grantor, passes an equitable title.

2. TRUSTS—*what does not create a constructive trust.* Violation, by the grantee, of a parol promise to the grantor to hold the land in trust for or convey it to some other person designated by the grantor, does not raise a constructive trust in the grantee unless he was guilty of fraud in procuring the conveyance.

3. SAME—*when voluntary grantee must be held to acquiesce in conditions.* Where a father, upon conveying a section of land to his daughter in exchange for a deed to another half section he had previously given her, tells her that he intends the section to be in full of her share of his estate, and that in the event he should die before recording the deed to the half section he desired her to re-possess herself of the deed and convey the half section to her sister, if the daughter, although she makes no reply, accepts the deed to the section she must be held to have accepted the land upon the conditions specified by the grantor.

4. SAME—*when grantee is under obligation to convey the land as a constructive trustee.* A daughter who accepts a deed to a section of land in exchange for a deed to a half section, and agrees with her father, the grantee in the latter deed, which had not been recorded, a few hours before his death, that if the deed were re-delivered to her she would convey the half section to her sister in accordance with the father's intention when the exchange was made but without intending to abide by her agreement, is under obligation to convey the land as a constructive trustee notwithstanding the legal title was in the father at his death, and she would, by law, inherit only a one-fifth interest in the land. (*Lantry* v. *Lantry,* 51 Ill. 458, distinguished.)

5. STATUTE OF FRAUDS—*the Statute of Frauds does not apply to a constructive trust arising out of fraud.* The Statute of Frauds, which makes invalid an express trust created by parol, has no application to cases where the law raises a constructive trust by reason of fraudulent acts and purposes in procuring the title.

6. SAME—*what takes case out of Statute of Frauds.* Where a conveyance is made between parties standing in a fiduciary relation to each other upon a parol agreement by the grantee to hold the land in trust for or convey it to some one else, when in fact the grantee has no intention of performing the agreement but intends to retain the benefit of the conveyance for himself, the law raises a constructive trust and takes the case out of the operation of the Statute of Frauds.

7. CONTRACTS—*when parol agreement to accept property in lieu of share of estate is valid.* A parol agreement by a child to accept a certain amount of property in lieu of her expected interest in her father's estate, when followed by the execution and delivery of a deed and possession of the property conveyed, is valid and binding.

APPEAL from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding.

Samuel Weaver, a wealthy farmer of Macon county, Illinois, died at his home in that county on the 9th day of March, 1905, at the age of eighty years. He left surviving him his widow, Sarah Weaver, and his children, Nancy Keister, Catharine Lehman, Susan F. Crossman, Alfred Weaver and Charles Weaver. Samuel Weaver being in feeble health and believing he would not live a great while, about December 10, 1904, executed deeds conveying to his children, except Alfred Weaver, and to Arthur Weaver, a grandson, the greater portion of his real estate. He appears to have owned something over 2000 acres of valuable farm lands in Macon county, 380 acres in Piatt county, 1100 acres in Shelby county, Illinois, and 1600 acres in Kansas. Appellant and her husband had resided several years on a farm, consisting of a half section, belonging to Samuel Weaver. This half section Samuel Weaver conveyed to Mrs. Crossman in fee simple. February 16, 1905, Mrs. Crossman and her husband conveyed this half section back to Samuel Weaver, and he and his wife thereupon conveyed to Mrs. Crossman the whole of section 25, which was in the same township as the half section and according to the testi-

mony was worth $96,000. The deed from Samuel Weaver to Mrs. Crossman to the half section had been delivered to her and was duly recorded in the recorder's office by her, but the deed from her back to her father for this tract of land, though delivered about the day of its date, was never recorded. The proof shows Samuel Weaver desired his daughter Nancy Keister to have the half section of land, as in the deed prepared for her in December only 160 acres were to be conveyed to her. At the time of the conveyance of the section to Mrs. Crossman the deed therefor was delivered to her. The deed to Mrs. Lehman was delivered to her some time in January or February, 1905. Mrs. Keister was in Kansas and did not return home until the day her father died, and the deed describing 160 acres was delivered to her the day after his death by Matilda Keister, Samuel Weaver's house-keeper and trusted employee, who testified that before his death Samuel Weaver gave her directions to deliver the deed to Mrs. Keister, his daughter, when she came. The deeds to the other children were not delivered to them until the day of their father's death, when Matilda Keister by his direction brought the deeds into his bed-room, where his children were assembled, and at his direction the respective deeds were delivered to them. After the conveyance back to Samuel Weaver by Mrs. Crossman of the half section he made no deed conveying that land to Mrs. Keister or any one else. At the time Samuel Weaver made the deeds to his children he also made a deed to Charles Cressler, whom he raised from boyhood, for 200 acres of the Macon county land, and this deed was delivered to the grantee when the deeds were delivered to the children on the day of the grantor's death. The number of acres conveyed to each of the parties by the respective deeds was as follows: Appellant, Mrs. Crossman, 640 acres; Mrs. Lehman 540 acres; Charles Weaver 500 acres; Mrs. Keister 160 acres; Charles Cressler 200 acres; and Arthur Weaver, the grandson, 1600 acres in Kansas. This disposed of all the land owned by

Samuel Weaver except 160 acres in Macon county and 1100 acres in Shelby county. No conveyance was made to Alfred Weaver, a single man about sixty years old. Within a few days after the death of Samuel Weaver his widow and heirs joined in a conveyance to Alfred Weaver of the 160 acres of land in Macon county and the 1100 acres in Shelby county, and the widow and all the heirs except Mrs. Crossman joined in a conveyance of the half section before mentioned to the daughter Nancy Keister. Mrs. Crossman was requested to join in this deed, in order, as it was claimed, to carry out the intention and desire of Samuel Weaver that Nancy should have said half section of land, but refused to do so. Thereupon Nancy Keister and husband filed a bill for partition for said half section of land, making appellant and others parties defendant. The bill alleged that Samuel Weaver died intestate and was at the time of his death seized in fee of said half section of land; that after the death of Samuel Weaver, his sons, Charles and Alfred Weaver, his daughter Catharine Lehman, and the widow, Sarah Weaver, conveyed all their interest in said half section to complainant; that she was the owner of the undivided four-fifths of said premises and Susan F. Crossman the owner of the undivided one-fifth thereof. The bill also alleged that a short time prior to the death of Samuel Weaver Mrs. Crossman was the owner of said premises by gift from her father; that in consideration of the conveyance to her of a section of other land, she and her husband conveyed said half section back to Samuel Weaver, who placed the deed therefor among his private papers without first having had it recorded, and that after the death of said Samuel Weaver Mrs. Crossman procured a member of his household to give her the deed, and thereafter she refused to deliver it up to be recorded.

The answer of Mrs. Crossman and her husband to said bill denied Samuel Weaver died seized of the premises therein described; denied any knowledge of the conveyance

of his other heirs to Mrs. Keister, and averred if any such conveyance was made it was for the purpose of clouding Mrs. Crossman's title; denied Mrs. Keister was the owner of the undivided four-fifths of said premises, and averred that appellant and her husband went into possession of said half section twenty-six years before the death of Samuel Weaver, made valuable improvements and paid the taxes thereon, in addition to paying $125 per annum under an agreement with Samuel Weaver that he would deed said premises to Susan F. Crossman, and that in pursuance of said agreement Samuel Weaver did deed to her said premises in December, 1904. The answer further avers that on February 16, 1905, Samuel Weaver and his wife conveyed to Susan F. Crossman 640 acres of land, and about the same date she conveyed back to him, for the express consideration of one dollar, said half section; that there was no money consideration for the conveyance, and that it was agreed between her and her father, at the time of the delivery of said deed, that in the event of the death of her father prior to March 1, 1906, the deed was to be considered between the parties as not delivered and was to become null and void; that the transaction was simply to preserve the rents to Samuel Weaver from said premises after March, 1906; that it was not intended the title should pass to him or that the deed should ever be recorded. The answer denied that Mrs. Crossman induced Matilda Keister, a member of Samuel Weaver's household, to give her the deed, and averred that said Weaver before his death directed Matilda Keister to give her (Mrs. Crossman) the deed in pursuance of their previous agreement, intending thereby to re-invest in her the title. The answer further averred that the deed from Samuel Weaver to Nancy Keister for the 160 acres of land was never delivered, but found among his private papers after his death and caused to be recorded by Nancy Keister, and that said premises should also be partitioned.

Afterwards complainants, by leave of court, filed an amended bill, in which Nancy Keister claimed she was entitled to the whole of the half section. The bill alleged that in December, 1904, during the last illness of Samuel Weaver, in carrying out his purpose to divide his property among his children, he conveyed to Susan F. Crossman the said half section of land; that afterwards, in consideration of his conveying to Susan F. Crossman a whole section, she and her husband conveyed back to Samuel Weaver said half section; that said Samuel Weaver informed Mrs. Crossman the half section was to be conveyed to Nancy Keister, and that the section conveyed to her was to be in full of all her interest in the lands of her father, and that the exchange of conveyances was made with that understanding and for that purpose; that said Weaver also requested Mrs. Crossman, if he died before her deed to him for the half section was recorded, to have said deed returned to her and for her then to convey said land to Nancy Keister, and that Susan F. Crossman agreed to do so; that said Weaver then delivered said deed to Matilda Keister for safe keeping, and instructed her that if he died without having it recorded, to deliver it to Mrs. Crossman, who would deliver it to Nancy Keister. The bill further alleged that on the day of the death of Samuel Weaver he repeated his desire to Mrs. Crossman that she convey said premises to Nancy Keister and that Mrs. Crossman agreed to do so; that the day after the death of Samuel Weaver Mrs. Crossman procured Matilda Keister to give her the said deed. The bill then avers that by virtue of the matters alleged a trust arose in Mrs. Crossman, whereby it became her duty to make a conveyance of said premises to Nancy Keister.

The answer of Susan F. Crossman and her husband to the amended bill denies that Nancy Keister is the owner or entitled to all of the said half section; denies that Samuel Weaver advised Susan F. Crossman that it was to be conveyed to Nancy Keister; denies that she accepted the deed

for the section in full of all interest in the real estate of her father; denies she made any agreement with him to convey said half section to Nancy Keister, or that such conveyance to Nancy Keister was any part of the consideration for the conveyance to her by her father of the whole section; denies Samuel Weaver reposed any confidence or trust in her, Susan F. Crossman, with reference to what he may have desired done for Nancy Keister; denies all other material allegations of the bill and sets up and relies on the Statute of Frauds and Perjuries. Susan F. Crossman and her husband also filed a cross-bill, in which it was alleged said Samuel Weaver owned said half section at the time of his death, and that his children inherited it subject to the widow's dower; that on March 15, 1905, the other children and widow conveyed their interest in said land to Nancy Keister, who became the owner of the undivided four-fifths and that Susan F. Crossman was the owner of the undivided one-fifth. The bill prays for partition of the premises in accordance with the interests of the parties as in said cross-bill alleged.

Answers and replications were filed and the cause referred to the master to take testimony and report his conclusions. The master, after hearing the testimony, found and reported against the contention of Nancy Keister, complainant in the amended bill, and in favor of Susan F. Crossman, complainant in the cross-bill. He found that Mrs. Crossman perpetrated no fraud upon Samuel Weaver and that he was not prevented by her from making such disposition of the land as he saw fit, and that no constructive trust as to the land was created in favor of Nancy Keister. He recommended a partition in accordance with the allegations and prayer of the cross-bill. On exceptions being filed in the circuit court to the report of the master, said report was overruled and set aside and a decree rendered in accordance with the prayer of the amended bill of Nancy Keister. From that decree this appeal is prosecuted.

LeForgee & Vail, and J. R. Fitzgerald, for appellant:

An express trust cannot be created by parol under the Statute of Frauds, which provides that all declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested or proved by some writing signed by the party declaring the trust. *Clarke* v. *Lott,* 11 Ill. 105; *Monson* v. *Hutchin,* 194 id. 431; *Fletcher* v. *Shepherd,* 174 id. 262; *Fischbeck* v. *Gross,* 112 id. 208; *Walton* v. *Follansbee,* 165 id. 480; *Hovey* v. *Holcomb,* 11 id. 660.

A mere verbal agreement to hold and re-convey land does not make a person a constructive trustee. *Biggins* v. *Biggins,* 133 Ill. 211; *Davis* v. *Stambaugh,* 163 id. 557; *Moore* v. *Horsley,* 156 id. 36; *Scott* v. *Harris,* 113 id. 447; *Stevenson* v. *Crapnell,* 114 id. 19; *Lawson* v. *Lawson,* 117 id. 98; *Williams* v. *Williams,* 180 id. 361.

The same rule obtains where it is claimed that a person agreed to convey land to a third party. *Lantry* v. *Lantry,* 51 Ill. 458; *White* v. *Cannon,* 125 id. 412; *Brock* v. *Brock,* 9 L. R. A. 287.

The mere refusal to execute an express trust or the denial of the existence of a trust by an alleged trustee does not constitute such fraud as will take the case out of the Statute of Frauds. *Adams* v. *Adams,* 79 Ill. 517; *Perry* v. *McHenry,* 13 id. 227; *Collins* v. *Hope,* 20 Ohio, 493; *Brock* v. *Brock,* 9 L. R. A. 287; 15 Am. & Eng. Ency. of Law, 1192, 1193; *Davis* v. *Stambaugh,* 163 Ill. 557; *Scott* v. *Harris,* 113 id. 447.

The mere refusal to perform a parol agreement void under the statute may be a moral wrong, but it is in no sense a fraud in law or equity. *Levy* v. *Brush,* 45 N. Y. 597; *Cassels* v. *Finn,* 68 L. R. A. 80.

The distinction between obtaining a will or deed by false and fraudulent promises and the mere failure to keep a parol promise has been repeatedly recognized by the courts. *Orth* v. *Orth,* 32 L. R. A. 298; *Ragsdale* v. *Ragsdale,* 11 id. 316; *Lantry* v. *Lantry,* 51 Ill. 458; *Wallace* v. *Long,* 105 Ind. 522.

Mere oral promises when testator is on his death bed, and which do not actually prevent the making of a will or deed, do not constitute the party making the promises a trustee *ex maleficio.* *Fox* v. *Fox,* 88 Pa. St. 19; *Bedilian* v. *Seaton,* 3 Wal. Jr. 279.

The alleged parol release of an expectancy is regarded by the law as an advancement, and void, unless there be some writing to evidence it or an agreement that there should be some writing to evidence such release if made. *Gary* v. *Newton,* 201 Ill. 170.

An oral agreement to devise real estate to another is within the Statute of Frauds, even if based on a past consideration. *Pond* v. *Sheean,* 132 Ill. 312; *Graham* v. *Dodge,* 122 id. 528; *Austin* v. *Davis,* 12 L. R. A. 120.

OUTTEN & ROBY, I. A. BUCKINGHAM, B. F. SHIPLEY, and WALTERS & LATHAM, for appellees:

Mrs. Crossman having accepted the deed to the section with the understanding and agreement that it was in full of her share in the real estate of her father, cannot now be allowed to claim any further interest in his real estate, even if he had full title thereto at the time of his death. *Galbraith* v. *McLain,* 84 Ill. 379; *Kershaw* v. *Kershaw,* 102 id. 307; *Crum* v. *Sawyer,* 132 id. 443; *Bartmess* v. *Fuller,* 170 id. 198; *Gary* v. *Newton,* 201 id. 180; *Riggles* v. *Erney,* 154 U. S. 253.

A constructive trust is one that arises where a person clothed with some fiduciary character, by fraud or otherwise gains something for himself. *Pope* v. *Dapray,* 176 Ill. 478; Perry on Trusts, (5th ed.) sec. 27; *Reed* v. *Reed,* 135 Ill. 482; *Stahl* v. *Stahl,* 214 id. 137.

Where a person obtains the title to property by virtue of a confidential relation, under such circumstances that he ought not, according to equity and good conscience, to hold and enjoy the beneficial interest in the property, courts of equity, in order to administer complete justice between the

parties, will raise a trust, by construction, out of such circumstances or relations, and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it or execute the trust in such manner as to protect the rights of the defrauded party and promote the safety and interest of society. Perry on Trusts, sec. 166; *Beach* v. *Dyer,* 93 Ill. 295; *Allen* v. *Jackson,* 122 id. 567; *Pope* v. *Dapray,* 176 id. 484; *Stahl* v. *Stahl,* 214 id. 139; *Roby* v. *Colehour,* 135 id. 337; 146 U. S. 153.

Whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, as, to convey the land to a designated individual, to re-convey it to the grantor, or the like, and having thus fraudulently obtained the title he retains, uses and claims the property as absolutely his own, the whole transaction by means of which the ownership is obtained will be treated, in equity, as a scheme of actual deceit, and in such state of case a court of equity will treat the person so acquiring the legal title as a trustee and decree him to hold the title for the benefit of the true beneficiary, and parol evidence is admissible to establish such trust as it arises *ex maleficio,* notwithstanding the plea of the Statute of Frauds. 2 Pomeroy's Eq. Jur. (2d ed.) sec. 1054; *Roby* v. *Colehour,* 135 Ill. 300; *Larmon* v. *Knight,* 140 id. 232; *Pope* v. *Dapray,* 178 id. 478; *Feeney* v. *Howard,* 12 Am. St. 162; *Mayrand* v. *Mayrand,* 194 Ill. 45.

Equity reaches every case, and grants relief where influence is acquired and abused or where confidence is reposed and betrayed. It is especially active and searching in dealing with gifts, but is applied, when necessary, to conveyances, contracts, executory and executed, and wills. *Mayrand* `v. *Mayrand,* 194 Ill. 45; 2 Pomeroy's Eq. Jur. sec. 951.

Courts will scrutinize with the most jealous vigilance transactions between parties occupying fiduciary relations

towards each other.  *Casey* v. *Casey*, 14 Ill. 112; *Dowie* v. *Driscoll*, 203 id. 480.

Where an antecedent fiduciary relation exists a court of equity will presume confidence.  2 Pomeroy's Eq. Jur. (3d ed.) sec. 951.

A devise in reliance on the devisee's oral promise to hold the property in trust imposes upon the devisee a constructive trust in favor of the intended beneficiary, even in the absence of actual fraud.  *Hoge* v. *Hoge*, 1 Watts, 163; *Reech* v. *Kennegal*, 1 Ves. 122; *David* v. *Tucker*, 41 Conn. 197; *Amherst* v. *Rich*, 151 N. Y. 282.

A promise made without any intention of performing it is a well recognized species of fraud.  *Brison* v. *Brison*, 7 Am. St. 191; *Henschel* v. *Mamero*, 120 Ill. 665.

Where a grantee in an unrecorded deed that has been executed and delivered to him, surrenders the deed to the grantor with the intention or request that it be destroyed, for the purpose of re-investing the title in the grantor, the grantor acquires the equitable, though not the legal, title. *Happ* v. *Happ*, 156 Ill. 183; *Gillespie* v. *Gillespie*, 159 id. 84; *Sanford* v. *Finkle*, 112 id. 146.

Mr. JUSTICE FARMER delivered the opinion of the court:

There is very little controversy as to the facts in this case. The proof on behalf of complainants in the amended bill was, that when Mrs. Crossman made and delivered the deed for the half section in controversy back to her father and received from him a conveyance to the whole section, her father told her he could not very well divide the section on account of the way it was watered, and that he thought best to give her the section and Nancy Keister the half section; that at that time Samuel Weaver told Mrs. Crossman if he died without the deed having been recorded he wanted said deed given back to her and for her then to convey the half section to Nancy Keister, and Mrs. Crossman agreed to do

so. The proof for complainants in the amended bill further shows that Samuel Weaver gave the deed to Matilda Keister, who was employed by him as a house-keeper and who appears to have been much trusted by him, and told her to put it with the other deeds, and if he died without having had it recorded she should give it back to Mrs. Crossman, who would convey the land to Mrs. Keister. At the time this occurred Samuel Weaver was in very feeble health and appeared to realize he could live but a short time. On the day of Samuel Weaver's death, and a few hours before he died, all his children except Mrs. Keister, who was not there, were called into his room and presence. He then directed Matilda Keister to get the deeds he had made to his children that had not been delivered, and by his direction they were then and there delivered. When this was done he directed Mrs. Crossman to make a deed to Nancy Keister for the half section. On account of his feeble condition he was unable to talk very plainly, and Mr. Cressler, who stood very near him, assisted him in making himself understood. To his request made to Mrs. Crossman she then and there assented. The next morning after Samuel Weaver's death Mrs. Crossman asked Matilda Keister to give her "that deed that pap said I was to have to deed Mrs. Keister." She was not given the deed just at that time, and later, during the same forenoon, she asked for it again. It was then given her by Matilda Keister, who testified she said to Mrs. Crossman at the time, "You know pap wanted you to deed it over to Mrs. Keister, and she said yes." After the deed was given to Mrs. Crossman she said, "Now I have got it and I may do something mean." The proof further shows that on a number of occasions Mrs. Crossman stated she was to convey the land to Nancy Keister. It is also shown by the testimony that at the time Samuel Weaver conveyed to Mrs. Crossman the section of land he told her it was to be in full of her share of all his real estate. We say the proof shows these things because they were testified to by wit-

nesses who were apparently credible and were not denied by anyone.

The theory of the complainants in the amended bill, as stated by counsel, is, first, that the relations between Samuel Weaver and Mrs. Crossman were such, under all the circumstances, as would make her a trustee under a constructive trust, with the duty of conveying to her sister, Nancy Keister, said half section of land; second, the conveyance by Samuel Weaver to Mrs. Crossman of the whole of a section was made in full of her share of the real estate of her father.

Appellant contends that there is no proof of fraud on the part of Mrs. Crossman out of which a constructive trust arises that would take the case out of the operation of the Statute of Frauds, and that there was no agreement by Mrs. Crossman to release her interest and expectancy as an heir to the real estate of her father. It is argued by counsel for appellant that she had no title to the half section of land at any time after her agreement with her father to convey it to Nancy Keister, if any such agreement was ever made, and therefore could not become a trustee for its conveyance; also, that she did nothing to induce her father to retain the title to the land in himself or to prevent him from conveying it to Nancy Keister had he so desired.

It is evident from the proof that Samuel Weaver and Mrs. Crossman were both of the impression that if the deed to him was not recorded but was delivered back to her the title would be in Mrs. Crossman, and she could then make a valid conveyance of it. The fact that this is not the law does not change the equitable rights and duties of the parties. The delivery back by the grantee, to the grantor, of an unrecorded deed could not affect the legal title to the land, but such a delivery with the intention that the deed be destroyed for the purpose of re-vesting title in the grantor passes an equitable title. (*Sanford* v. *Finkle,* 112 Ill. 146; *Gillespie* v. *Gillespie,* 159 id. 84; *Happ* v. *Happ,* 156 id.

183.) While the unrecorded deed from Mrs. Crossman to her father was not delivered back to her by him during his lifetime for the purpose of re-vesting title in her so that she could convey it to Nancy Keister, it was, in accordance with his directions and at Mrs. Crossman's request, delivered to her for that purpose immediately after his death. The violation of a parol promise made by the grantee to the grantor to hold the land in trust or to convey it to a person designated by the grantor would not create a constructive trust in the grantee unless he was guilty of fraud in procuring the conveyance. The Statute of Frauds makes invalid an express trust created by parol, but has no application to cases where the law raises a constructive trust by reason of the fraudulent acts and purposes in procuring title to the land. What constitutes fraud in such cases sufficient to take the case out of the operation of the Statute of Frauds depends in a large measure on the relation to each other of the parties to the transaction. Fraud is much more readily inferred where the parties occupy a confidential or fiduciary relation toward each other. It seems to be well settled that where a conveyance is made between parties standing in a fiduciary relation to each other, on a parol agreement of the grantee to hold the land in trust for or convey it to some one else, when in fact the grantee has no intention of performing the agreement but intends to retain the benefit of the conveyance for his own use, the law raises a constructive trust and takes the case out of the operation of the Statute of Frauds. In such cases equity will compel the performance of the trust. (*Larmon* v. *Knight,* 140 Ill. 232; *Pope* v. *Dapray,* 176 id. 478.) A large collection of authorities in support of this proposition will be found in *Brison* v. *Brison,* 7 Am. St. Rep. 189. It would hardly be denied that if, when Samuel Weaver conveyed the section of land to Mrs. Crossman, the agreement between them had been that in consideration of the conveyance to her of the 640 acres she would convey the half section to which she held title by a previous conveyance

from her father, to her sister, Nancy Keister, without having any intention of performing the agreement while knowing her father relied upon and confided in her to do so, this would be such a fraud that the law would make her a constructive trustee and compel her to execute the trust.

In *Roby* v. *Colehour*, 135 Ill. 300, the court quoted with approval from the opinion of Lord Chelmsford in *Tate* v. *Williamson*, L. R. 2 Ch. App. Cas. 55, as follows: "The jurisdiction exercised by courts of equity over the dealings of persons standing in certain fiduciary relations has always been regarded as one of a most salutary description. The principles applicable to the more familiar relations of this character have been long settled by many well known decisions, but the courts have always been careful not to fetter this useful jurisdiction by defining the exact limits of its exercise. Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no confidential relation had existed."

In *Larmon* v. *Knight, supra,* the court quoted from Hill on Trustees, as follows: "Where a person by means of his promises, or otherwise by his general conduct, prevents the execution of a deed or will in favor of a third party with a view to his own benefit, that is clearly within the first head of frauds as distinguished by Lord Hardwicke, viz., that arising from facts or circumstances of imposition; and the person so acting will be decreed to be a trustee for the injured party, to the extent of the interest of which he has been thus defrauded."

The proof shows that at the time Samuel Weaver made Mrs. Crossman the deed for the section and she made him a deed back for the half section in controversy he was eighty

years old, very feeble in health and to all appearances could live but a short time. He was desirous of making disposition of the greater portion of his real estate among his children for that reason. When he made the deed to Mrs. Crossman for the section he told her, as we have before stated, he intended it to be in full of her share in all his real estate. The evidence does not show that Mrs. Crossman made any reply to this statement of her father but she accepted the conveyance, which gave her the title to the land, with right to the possession of it at the expiration of a lease thereon which expired March 1, 1906. She must be held, therefore, to have acquiesced in and accepted the land upon the conditions made by her father. It is true, she did not retain title to the half section under an agreement to convey it to Nancy Keister, but the case, in principle, is much the same as if she had. On account of the advanced age and feeble health of Samuel Weaver it is natural he should desire to avoid engaging in business transactions as far as possible. It is reasonable to presume these considerations influenced him in requesting Mrs. Crossman, in the event of his failing to have the deed recorded and delivering it back to her, to make the conveyance to Nancy Keister. It is evident both of them thought this would make good title. That Mrs. Crossman thought the re-possession by her of the unrecorded deed would re-vest the title in her, clearly appears from the proof and from her answer to the original bill filed in this case. In that answer she claimed to own the entire half section, and that the deed from her to her father was not intended to be recorded or to pass title to the grantee, and avers that before her father's death he directed Matilda Keister to return the deed to her in pursuance of their agreement, intending thereby to re-vest the title in her.

But it is contended the proof does not show Mrs. Crossman had any fraudulent intent at the time of the agreement between her and her father, when the deeds were exchanged

between them. The proof does not sustain this contention. It is shown by the evidence, as before stated, that on the day of Samuel Weaver's death, and some five or six hours prior thereto, he repeated to Mrs. Crossman his request and direction that she convey the land to Nancy Keister, and she assented thereto. It is further shown by the evidence she said, after she had stood at the bedside of her father and assented to his request and before his death, that she wanted to get the deed back, as she thought she ought to have the land because they had spent all they made on it; that her lawyer had advised her to steal it, and that it would be all right if she got it back without her father's knowledge. That she made these statements Mrs. Crossman did not deny. Whether, therefore, she had the fraudulent purpose and design in her mind to refuse to comply with her agreement with her father at the time it was originally made, it is true she had such fraudulent purpose and design before his death and before he repeated his request to her and she again agreed to it on the day of his death. It thus appears that prior to her last agreement with her father to convey the land to Nancy Keister she had no intention of doing so, for she had previously consulted a lawyer with reference to getting the unrecorded deed back in her possession for the express purpose of claiming the land herself. Just how soon after the exchange of deeds between Mrs. Crossman and her father she consulted a lawyer with reference to getting the unrecorded deed back again does not appear from the evidence, but it could not have been very long after that transaction, for the deeds were exchanged February 16 and Samuel Weaver died on the 9th of March following. Taking the proof altogether, it tends strongly to show that when Mrs. Crossman first agreed with her father to convey the half section of land to Nancy Keister she did not intend to do so, but made the agreement with a fraudulent intent and purpose in her mind to influence her father not to record the deed and convey the land to Nancy

Keister, in order that she might profit thereby. The fact that Samuel Weaver died with the legal title in him and that Mrs. Crossman would by law inherit only the undivided one-fifth of the land does not alter her relations to whatever interest she succeeded to in the land, nor relieve her of the duty and obligation, as a constructive trustee, to convey it to Nancy Keister.

Much reliance is placed on *Lantry* v. *Lantry,* 51 Ill. 458, by appellant, but we think that case is by no means conclusive of this case. In the *Lantry case,* John Lantry conveyed to Thomas Lantry, by absolute deed, eighty acres of land. John Lantry had a son born after he was divorced from his wife and who never lived with his father. When he made the deed to his brother he was ill and expected to be taken care of by the brother, who asked him at the time if his son was not to have something. John Lantry replied, "If the boy is worthy, give him what you please; if not, never look at him." The court held in that case there was no evidence Thomas Lantry ever said or did anything to induce his brother to convey the land to him or to prevent him from conveying it to his son. Such is not the case under this evidence. It cannot be said that Mrs. Crossman's promise to convey the land, to Nancy Keister did not induce her father to withhold the deed from record and not himself convey the land to said daughter. If Mrs. Crossman had refused to agree to comply with her father's wishes, it is reasonable to infer that he would in that case have attended to the matter himself. Even on the day of his death, if she had repudiated the trust reposed in her by her father when he again told her to make the deed to Nancy Keister, there would have then been time enough for him to have made it himself, for the proof shows, though very weak, his mind was clear and he lived some five or six hours after that promise was made by Mrs. Crossman.

Our conclusion from the evidence is, that Mrs. Crossman, by her fraudulent undertaking and promise after she

had received what was intended by her father and accepted by her as her full share of his real estate, induced her said father not to convey the land in controversy to her sister, Nancy Keister, for the purpose and intention of profiting thereby herself. If we are correct in these conclusions, whatever of interest she succeeded to in the land as a result of her fraudulent conduct she cannot be permitted to retain, but is in equity bound to convey to Nancy Keister. A trust thus created need not be in writing. It was aptly said in *Brown* v. *Doane,* 86 Ga. 38: "There is no law which requires a fraudulent undertaking to be manifested by writing. Those who use promises which they make deceitfully, for the purpose of accomplishing fraudulent designs, are generally careful not to furnish written evidence of their turpitude. Such promises, whatever may be their terms, do not, unless reduced to writing, raise express trusts, but the law, acting upon them according to their nature, makes them a basis upon which to build up in favor of the defrauded party an implied or constructive trust." We have examined the large number of cases cited in the exhaustive brief of appellant, but deem it unnecessary to comment on them or attempt to distinguish them from this case. It is sufficient to say that the weight of authority is as we have herein stated.

Whether the acceptance by Mrs. Crossman of the section of land in full of all her interest in and to her father's real estate was of itself sufficient to deprive her of any interest in the land in controversy, in the view we take of the case is not necessary here to be decided, though it has been repeatedly held in this State that the parol promise of an heir to accept a certain amount of property in lieu of his expected interest in his father's estate, when followed by the execution and delivery of a deed and the possession of the property conveyed, is valid. (*Gary* v. *Newton,* 201 Ill. 170; *Kershaw* v. *Kershaw,* 102 id. 307; *Galbraith* v. *Mc-Lain,* 84 id. 379.) Whatever may have been the legal effect

, of this agreement standing alone, considered in connection with the other proof in this case it. clearly establishes such fraudulent conduct on the part of Mrs. Crossman that equity cannot permit her to profit thereby.

The decree of the circuit court is affirmed.

*Decree affirmed.*